**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

Leroy Garner,

*Plaintiff,*

v.

Case No. 3:21-cv-051
Judge Thomas M. Rose

Fuyao Glass America,

*Defendant.*

---

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (ECF 31), AND ORDERING THE CLERK TO TERMINATE THE CASE.**

---

Pending before the Court is Defendant's Motion for Summary Judgment. (ECF 31.) Because there is no genuine issue of material fact, summary judgment can be awarded to Defendant on Plaintiff's employment discrimination claims against Defendant.

I.      **Background**

Plaintiff Leroy Garner is a Caucasian American. (ECF 30, PageID 194, Garner Depo. 45.) He attended and volunteered at the "First Heavy Metal Church of Christ" in Dayton during his employment with Defendant Fuyao Glass America. (*Id.,* PageID 189, Garner Depo. 25.) He received a mail-in certificate of ordination from the Universal Life Church in the early 1990s. (Id.)

Garner worked at Fuyao as a maintenance technician from May 2015 through June 28, 2019. (*Id.,* PageID 188, 193, Garner Depo. 18, 41.) Upon being hired, Garner received Fuyao's Associate Handbook and kept it in his toolbox at work. (*Id.,* 207, Garner Depo. 94-5; ECF 30-3,

Garner Depo. Ex. 3.) Sections 2.2 and 2.3 of the Associate Handbook prohibit discrimination and harassment in all facets of employment based upon, *inter alia*, race, religion, and national origin. (*Id.,* Garner Depo. 96.) The Handbook informs employees that they should report any perceived violations to management, the Employee Relations Department, or the Human Resources Department. (*Id.,* 208, Garner Depo. 101; ECF 33-1, PageID 326, Decl. ¶8.)

When Garner was hired, he was informed that he would have a "Monday through Friday" job. (Id. 192, Garner Depo. 36.) Garner explains that "[Fuyao] w[as]n't even open on weekends, so it wasn't an issue." Id. Garner never worked any Sundays while employed with Fuyao. (*Id.,* 195, Garner Depo. 46.) Fuyao did not implement a Sunday work policy for any employees in the maintenance department while Garner was employed at Fuyao. (*Id.,* 195, Garner Depo. 47.) Fuyao never scheduled Garner to work on a Sunday at any time during his employment. (ECF 30, PageID 215, Garner Depo. 126-7; ECF 31-1, PageID 326, Decl. ¶3.)

For several months leading up to Garner's termination, Florentino "Tino" Torres was Garner's immediate supervisor. (*Id.,* 194, Garner Depo. 42.) Torres is an American of Mexican descent (*Id.,* 194, Garner Depo. 45), and he, like Garner, is a Christian. (*Id.,* 204, Garner Depo. 82.) As a supervisor, Torres had authority, in consultation with Fuyao's Human Resources department, to hire and fire subordinates. Torres made the ultimate decision to terminate Garner's employment. (ECF 33-1, PageID 327, Decl. ¶10.)

Yuwen Wang was also a supervisor in the maintenance department at the time of Garner's employment. Wang is Chinese and only speaks Mandarin. (ECF 30, PageID 205, Garner Depo. 85.) Wang conversed with Garner and other employees solely through an interpreter. (*Id.,* 153, Garner Depo. 53.) Wang and Torres both issued disciplinary warnings to Garner prior to Garner's

2

termination. Garner's four progressive discipline warnings leading up to his termination, including those issued by Wang, predated a conversation he had with Wang in May 2019 that forms the basis for his complaint. (*Id.,* 209-12, Garner Depo. 103-16.)[1]

The four disciplinary actions prior to his termination began with a documented verbal warning from Wang on November 15, 2018, for failure to timely close out work orders in the system. (*Id.,* 209, Garner Depo. 102; ECF 31-4, Ex. 4; ECF 33-1, PageID 327, Decl. ¶11.) Garner received another documented warning from Torres and Wang on April 26, 2019 (*Id.,* Garner Depo. 103, Ex. 5; ECF 33-1, PageID 327, Decl. ¶12), for "intimidating, hostile and offensive" conduct toward coworkers and management. (*Id.,* 209-10, Garner Depo. 105-6.) Garner received a third progressive discipline warning from Torres and Wang on April 27, 2019, for "unreasonably interfering" with supervisor Torres' work by removing materials that Torres had gathered for a project. (*Id.,* 211, Garner Depo. 111-12, ECF 31-6, Ex. 6; ECF 33-1, PageID 327, Decl. ¶13). Torres and Wang issued a fourth progressive discipline warning to Garner on May 6, 2019 (*Id.,* 212, Garner Depo. 117, ECF 31-7, Ex. 7), for Garner's failure to communicate with his supervisors on two occasions during working hours and his failure to adequately repair equipment assigned to him. (*Id.,* 212, Garner Depo. 116; ECF 33-1, PageID 327, Decl. ¶14.)

Although he signed some of this written discipline "under protest," Garner never complained to anyone at Fuyao that any of the discipline he received was unfair. (*Id.,* 212, Garner

---

1 Garner attempts to change the date of this conversation, by means of a later-filed affidavit. "After a motion for summary judgment has been made, a party may not create a factual issue by filing an affidavit that contradicts her earlier deposition testimony." *Kelso v. City of Toledo,* 77 F. App'x 826, 833, 2003 WL 22284122, *7 (6th Cir. 2003) (citing *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). While the affidavit is unsigned, it would be of no evidentiary value even if it were, as it consists entirely of attempts to change deposition testimony and at other times assert facts for which Garner shows no basis for knowledge, such as how other employees were or were not disciplined.

Depo. 114.) In fact, Garner never complained to human resources, employee relations, or management about anything throughout his employment at Fuyao. (*Id.,* 212, Garner Depo. 115.)

In late May 2019, after he had accumulated several disciplinary actions, Garner initiated and recorded a conversation with Wang in which Garner explored the possibility of having to occasionally start working Sundays. (*Id.,* 195, Garner Depo. 46-7.) Garner does not speak Mandarin, so he only understood the English parts of the conversation as spoken to him by the interpreter. (*Id.,* 197, Garner Depo. 54.) The quotes Garner attributes to Wang in his Complaint and elsewhere supposedly came from this transcribed recording. (*Id.,* 198, Garner Depo. 58.) While recording the conversation, Garner attempted to get Wang to agree through the interpreter with the premise that "work overrides religion." (*Id.,* 206, Garner Depo. 91.)

Despite Garner trying to provoke Wang into criticizing his attendance at the Heavy Metal Church of Christ on Sundays, Wang said that he did not want to talk about it. (*Id.,* 206, Garner Depo. 90-1.)

> Garner: I have to be able to go to church, though. That is my right.
>
> Interpreter: [Wang] says what if the equipments [sic] are down and you're not in your place. Our department's a special department. Monday through Friday, the lines are always running. And sometimes they do things on Saturdays. So, Sunday would be the only time to do maintenance.
>
> Garner: My devotion is to my God and my family. I have to go to church on Sunday.
>
> Interpreter: This week, you're going to go, you're going to come on Saturday. But in the future, you will adjust it if needed. * * *
>
> Garner: They are only scheduled to work 10 Saturdays this year for ARG.

Interpreter: He says he doesn't know anything about it and that's not something we need to worry about. The only thing we need to know is, if Saturday we cannot work on it, then Sunday would be the only time.

Garner: What about church? Is he saying I can't go?

Interpreter: No, he does not say you can't go to church.

Garner: So, I still can?

Interpreter: Whenever it's related to work, he's not going to talk about anything to religion with you, because it is irrelevant to work.

Garner: So, what does that mean?

Interpreter: That means he doesn't want to talk about religion. The only thing—the only concern of the work [sic].

Garner: Okay, but--so, is he saying work overrides religion?

Interpreter: Okay, he's reject [sic] to talk about it.

(ECF 30-1, Garner Depo. Ex. 1.) Through the somewhat broken English of the interpreter, Wang said: (i) he did not want to debate religious issues; (ii) there could come a day when the company needed work to be performed on Sunday (although not yet); and (iii) he clarified he was not saying that Garner had to forego church on Sundays.

Garner never told Wang that he took umbrage with his comments. (ECF 30, PageID 207-08, Garner Depo. 98, 99-100.) Moreover, Garner never reported to management, employee relations, or human resources about his conversation with Wang. (*Id.,* 206, Garner Depo. 92-3.) Other than this single conversation in May 2019, Garner testified he has no reason to think Wang discriminates based on religion. (*Id.,* 225, Garner Depo. 167.)

On June 28, 2019, Torres conducted Garner's termination meeting with an HR representative present. (*Id.,* 215, Garner Depo. 127.) The termination notice was written, signed,

5

and presented by Torres. (*Id.,* 217, Garner Depo. 135-6, Ex. 9; ECF 33-1, PageID 327, Decl. ¶15.) Wang did not sign the termination notice, and he was not a part of the termination decision. (ECF 33-1, PageID 327, Decl. ¶15.) Torres informed Garner that the termination—his fifth step of progressive discipline since November 2018—was due to Garner's work performance, specifically his failure to timely fix hooks. (*Id.,* 215, Garner Depo. 127.) According to the termination notice, "[Garner] was asked to repair or prepare 10 hooks a day for backups for our bending furnace failures. It's been 3 weeks and only a few have been prepared. Job should have been completed." (ECF 30-9, Garner Depo. Ex. 9.) Repairing and preparing hooks was a routine part of Garner's maintenance job. (ECF 30, PageID 215, Garner Depo. 129.) Garner recalls being assigned a quota of 10 hooks per day, which he acknowledged to be a semi-reasonable quota but one he did not always meet. (*Id.,* 216-17, Garner Depo. 130-1, 133-4.)

According to Torres' notes, Garner was assigned to complete around 150 hooks during his last three weeks of work (i.e., 10 hooks per day for 15 days), but Garner only completed 20 or 30 of them. (ECF 33-1, PageID 327, Decl. ¶16.) Garner claims he does not recall having only 20 or 30 hooks completed in his last three weeks of work, as indicated by Torres. (ECF 30, PageID 218, Garner Depo. 139.) However, Garner admits he "may have been" reminded repeatedly by managers in his last three weeks of work that he needed to get them done, which is consistent with Torres' internal notes. (*Id.,* 218, Garner Depo. 139-40; ECF 33-1, PageID 327, Decl. ¶16.)

On April 23, 2020, Garner filed a charge of discrimination and a sworn statement under penalty of perjury with the Equal Employment Opportunity Commission ("EEOC"). (*Id.,* 202, Garner Depo. 77, ECF 30-2, Ex. 2.) His charge accused Fuyao of retaliation, as well as discrimination on the basis of his race and religion. (*Id.,* 203, Garner Depo. 79, Ex. 2.) Despite

admitting in his deposition that he was never scheduled or asked to work a single Sunday during his employment with Fuyao (*Id.,* 215, Garner Depo. 126- 7), Garner averred in his charge that he was "asked by management to work on Sundays," which he swore was corroborated by the audio recording he captured. (*Id.,* 203, Garner Depo. 79, ECF 30-2, Ex. 2.) Garner's sworn charge also alleges that Wang said, "God is not important, Fuyao is more important." (ECF 30-2, Garner Depo. Ex. 2.)

However, Garner's recorded conversation with Wang does not reflect such a statement. Garner filed his Complaint on February 10, 2021. He signed his sworn responses to interrogatories in this action on May 11, 2022. (ECF 30, PageID 226, Garner Depo. 170-1, Ex. 13.) Specifically, he swore in response to Interrogatory 4 that he had "a recording of a conversation with various individuals at Fuyao during which Plaintiff was told to work on Sundays because 'God was not important.'" (*Id.,* 227, Garner Depo. 175.) Garner acknowledged in deposition that his sworn interrogatory response about his conversation with Wang is false. (*Id.,* 227, Garner Depo. 176.)

Having filed a charge with the EEOC and received a right-to-sue letter, on February 10, 2021, Plaintiff filed this action asserting claims of Intentional Racial Discrimination in Violation of Title VII; Intentional National Origin Discrimination in Violation of Title VII; Retaliation; and Discrimination in Violation of Ohio Law. (ECF 1, PageID 1-5.)

## II.    Standard

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. at 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.,* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. at 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party.

*Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

## III.    Analysis

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). It is a violation of Title VII to take an adverse employment decision against an employee because of his or her membership in a protected class. See, e.g., *White v. Columbus Metro. Hous. Auth.,* 429 F.3d 232, 240 (6th Cir. 2005). Counts I and II of the Complaint assert violations of Title VII on a disparate treatment theory of discrimination; Count IV repeats the complaints of Counts I and II under Ohio law. These counts allege Fuyao discharged Garner because of his religion, race, and national origin. Courts analyze federal and Ohio state law claims of discrimination in the same manner. *Fletcher v. U.S. Renal Care*, 709 F. App'x 347, 351 n.1 (6th Cir. 2017). As such, Counts I, II, and IV of the Complaint will be analyzed and disposed of together.

A plaintiff may establish a claim of discrimination either by presenting direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of

discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence is where an employer's statement directly shows discriminatory motive. See *Schlett v. Avco Fin. Servs., Inc.*, 950 F. Supp. 823, 828 (N.D. Ohio 1996). Evidence that would require the jury to infer a fact is not direct evidence. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). Direct evidence, in the form of verbal comments, will be similar to an employer telling its employee, "I fired you because you are disabled." *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir. 1998); *see also In re Rodriguez*, 487 F.3d 1001, 1008-09 (6th Cir. 2007) (plaintiff had direct evidence of discrimination where a decision-maker stated that the plaintiff would not receive a promotion because of his Hispanic speech pattern and accent). The discriminatory statement must bear some kind of connection to the adverse action. *See*, C*esaro v. Lakeville Cmty. Sch. Dis*t., 953 F.2d 252, 254 (6th Cir. 1992).

Wang's comments are not direct evidence. Not only is Wang's comment in the recording non-discriminatory, but Wang's comment is also a stray comment by a non-decisionmaker. Only statements by the decisionmaker, not stray remarks of other company officials, can be considered evidence of discriminatory intent. *See*, *e.g.*, *Tooson v. Roadway Express, Inc*., 47 Fed. Appx. 370, 375 (6th Cir. 2002); *Hopson v. DaimlerChrysler Corp*., 306 F.3d 427, 433 (6th Cir. 2002) (comments by manager lacking any involvement in the decision-making process do not constitute direct evidence).

In the context of discrimination cases, "direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Acree v. Tyson Bearing Co*., 128 F. App'x 419, 427 (6th Cir. 2005) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp*., 176 F.3d 921, 926 (6th Cir. 1999)).

10

Garner claims the recorded conversation with Wang provides direct evidence to support his religious discrimination claim. However, Wang was not a decision maker in terminating Garner and the recording does not display religious animus. Wang refused to engage in a theological discussion with Garner about the hypothetical of having to work on Sundays in the future. The conversation was too ambiguous, isolated, and removed from the context of Garner's termination to support Garner's claim. *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005) (isolated and ambiguous comments are insufficient to support a finding of direct discrimination); *see also Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) (isolated and ambiguous comments are not sufficient to demonstrate direct evidence in a case of employment discrimination).

In the absence of direct evidence of discrimination, Garner's disparate treatment claims can only survive summary judgment if he can produce circumstantial evidence establishing each essential element of a *prima facie* case of discrimination. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–54 (1981). If a plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 377 (6th Cir. 2002). If the defendant articulates such a reason, the burden shifts back to the plaintiff to show that the reason given is merely a pretext for discrimination. *Id*. at 378. The burden of proof rests at all times with the plaintiff. See *McDonnell Douglas*, supra; *Burdine*, supra.

Garner is Caucasian and American. In addition to the burden set forth above, a plaintiff in the majority who alleges "reverse discrimination" bears a heightened burden of "demonstrating that he was intentionally discriminated against despite his majority status." *Murray v. Thistledown*

*Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (quoting *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C. Cir. 1983)). When a plaintiff is asserting a claim for reverse-discrimination, the Sixth Circuit requires a higher burden of proof for plaintiffs who are members of majority classifications. *Goller v. Ohio Dep't of Rehab. & Correction*, 285 F. App'x 250, 256 (6th Cir. 2008). "In cases involving reverse discrimination claims, such as here, the first prong in establishing a *prima facie* case does not require the plaintiff to show that he or she is a member of a racial minority; instead, it requires the plaintiff to establish "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Gregory v. Louisville/Jefferson Cty. Metro Govt.*, 3:21-cv-577, 2021 U.S. Dist. LEXIS 247340, at *11-12 2021 WL 6135559, at *4 (W.D. Ky. Dec. 29, 2021) (citing *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (citations omitted)); *Russell v. City of Bellevue*, No. 3:20-cv-2859, 2021 WL 1517921, at *6 (N.D. Ohio Apr. 16, 2021). Background circumstances can consist of the following: statistical evidence or employment policies showing a history of unlawful consideration of race by the employer; evidence that the person responsible for the employment decision was a minority; or evidence of ongoing racial tension in the workplace. *Gregory*, 2021 U.S. Dist. LEXIS, at *11-12.

In this action, Garner's first claim cannot meet the burden of providing evidence of "background circumstances" that Fuyao discriminates against the majority. His only purported evidence of race and national origin discrimination, in particular, involves his perception that he had more tedious assignments than unspecified Chinese employees, and that they had "way longer" lunch breaks. (*Id.*, 218, Garner Depo. 145-6.) Such workplace slights are insufficient indicia of discrimination to support Title VII claims. *See, e.g.*, *Morales-Valentine v. Potter*, 605

F.3d 27, 36-7 (1st Cir. 2010) (plaintiff's claim that "coffee and lunch break policy was not enforced in an equal and nondiscriminatory manner" failed to rise to the level of an actionable claim); *Dean v. Phillip Morris USA Inc.*, 2003 U.S. Dist. LEXIS 13035 at *21-2, 2003 WL 21754998, at *7 (M.D.N.C. 2003) (granting summary judgment where disparity in plaintiff's work assignments "caused her inconvenience and understandable unhappiness, [but] they are not adverse employment actions redressable under Title VII"). Thus, Garner cannot meet the first prong of the *McDonnell Douglas* test for reverse discrimination claims. As such, his disparate treatment claims for race discrimination and national origin discrimination will be dismissed.

Plaintiff's religious accommodation claim, Count II, fairs no better. "The analysis of any religious accommodation case begins with the question of whether the employee has established a *prima facie* case of religious discrimination." *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987). To establish a *prima facie* case, an employee must show that "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Id.* (citation omitted).

Garner's religious accommodation claim fails because he was never faced with a religion-work conflict, and he was not discharged or disciplined for any such real conflict. Even assuming that Garner's former affiliation with the Heavy Metal Church of Christ satisfies the first prong, and assuming that his conversation with Wang in May 2019 fulfilled the second prong (despite being a discussion of a hypothetical situation), Garner cannot meet the third prong for a failure-to-accommodate claim. He could not have been "discharged for failing to comply" with a rule that he work on Sundays, because Fuyao never had any such rule (ECF 33-1, PageID 326, Decl. ¶3),

13

and he was never scheduled or asked to work on any Sunday. (*Id.*, 215, Garner Depo. 126-7.) As such, Garner cannot prevail on this claim as a matter of law.

Count III of Garner's Complaint alleges retaliation under Title VII Ohio law, claiming he engaged in "protected activity" by asking not to work on Sundays. Title VII forbids employer actions that discriminate against an employee because the employee participated in protected activity, such as an EEO investigation. *Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53, 59 (2006). Where a plaintiff relies on indirect evidence to establish his claim, the familiar *McDonnell Douglas* burden-shifting framework applies. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Id*. To satisfy the third prong, the plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. Ry.*, 548 U.S. at 67-68 (internal quotation omitted). The standard is objective and does not protect a plaintiff from trivial harms, such as petty slights, minor annoyances, and a simple lack of good manners, which are not likely to deter victims from complaining to the EEOC. *Id*. at 68.

"Opposing conduct" sufficient to support a Title VII retaliation claim includes complaining to anyone— management, other employees, unions or newspapers— about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful and opposing unlawful

acts by persons other than the employer, such as former employers and co-workers. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). Courts do not require that a plaintiff's complaints be lodged with absolute formality, clarity, or precision. *Stevens v. St. Elizabeth Med. Ctr., Inc*., 533 F. App'x 624, 631 (6th Cir. 2013).

Retaliation claims are subject to the same burden shifting analysis noted above. First, the plaintiff must make out a *prima facie* case of retaliation by showing that: (1) he engaged in a protected activity; (2) the employer knew that he engaged in this protected activity; (3) the employer subsequently took an adverse employment action against him; and (4) there is a causal link between the protected activity and the adverse employment action. *Wade v. Knoxville Utils. Bd*., 259 F.3d 452, 463 (6th Cir. 2001). The evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action. *Id*.

Garner offers no evidence that he engaged in statutorily protected expression under Title VII. Title VII recognizes two forms of statutorily protected expression. An employee is protected from retaliation if: (1) "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause); or (2) "he has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause). *See* 42 U.S.C. § 2000e-3(a).

Garner's allegations do not invoke retaliation under the participation clause. He has not presented any argument or evidence that he was discharged in retaliation for filing charges of discrimination with the EEOC. Nor could he; Garner only filed a discrimination charge with the EEOC on April 23, 2020, ten months after his discharge. (*Id.,* 202, Garner Depo. 77, ECF 31-2, Ex. 2.) His EEOC filing could not have been a termination factor considered by Fuyao. Likewise,

15

Garner's only religious allegation—i.e., that he told a supervisor that he did not want to work on Sundays if Fuyao ever asked him to do so—does not invoke the opposition clause of Title VII. "Consistent with the plain meaning of the word 'oppose,' the initial request for a religious accommodation simply does not 'implicitly' constitute opposition to the ultimate denial of the requested accommodation." *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018) (affirming summary judgment).

Here, Garner never had an occasion to work on Sundays, and Fuyao never had an occasion to consider an accommodation, let alone to refuse one. Without either participating in an EEOC investigation or opposing an actual unlawful practice, Garner cannot point to his own volunteered comment about a preference not to work on Sundays as "protected activity" for purposes of his Title VII retaliation claim. Thus, Count III will be dismissed.

Even assuming arguendo that Garner engaged in a protected activity, Garner's claim of retaliation also fails because there is no causal link between the hypothetical request for Sundays off and the decision to terminate his employment for performance reasons.

To establish a causal connection to satisfy the fourth prong of a retaliation claim, a plaintiff must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). Garner must prove that but for his engaging in protected activity, his termination would not have occurred. It is not enough for an employee to simply assert that managers generally have knowledge of employees' complaints to avoid summary judgment on a retaliation claim. *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482 (6th Cir. 2008). If the decision maker had no apparent knowledge of the protected activity, "the plaintiff must do more than 'offer[] only conspiratorial theories . . . or

16

flights of fancy, speculations, hunches, intuitions, or rumors.'" *Proffitt v. Metro. Gov't of Nashville & Davidson County*, 150 F. App'x 439, 443 (6th Cir. 2005).

Garner identifies his conversation with Wang as the sole reason for believing his request for accommodation was the real reason for his termination. (*Id.,* 221, Garner Depo. 153.) However, all of his progressive discipline issued by Wang came before the May 2019 conversation about Sunday work and religious beliefs; and Wang had no input into the decision to discharge Garner in June 2019, which was decided by Torres and after a series of routine disciplinary write-ups.

Mere speculation about whether other managers not involved in the adverse action somehow influenced the actual decisionmaker is insufficient. *See Crane v. Mary Free Bed Rehabilitation Hospital*, 634 F. App'x 518, 526-27 (affirming summary judgment where a plaintiff failed to offer evidence that supervisors with knowledge of her complaint took part in the employment decision or otherwise influenced the decisionmaker); *Evans v. Pro. Transp., Inc.*, 614 F. App'x 297, 302-03 (6th Cir. 2015) (finding no inference that decisionmaker knew of plaintiff's protected activity merely because third-party supervisor knew of activity); *Mulhall v. Ashcroft*, 287 F.3d 543, 553 (6th Cir. 2002) (affirming summary judgment where plaintiff could not show that the first official who knew of his protected activity "actually participated in the adverse employment action in the present case"). Thus, Garner's Title VII retaliation claim will also be dismissed due to failure to satisfy the fourth prong by demonstrating a causal connection.

Finally, even if he could make *prima facie* showings, Garner's Title VII and Ohio discrimination and retaliation claims fail as a matter of law because Fuyao has articulated a legitimate, nondiscriminatory reason to terminate him, and a jury could not reasonably doubt these reasons based on the uncontested evidence. *See McDonnell Douglas*, 411 U.S. at 802–03. An

17

employee who accumulates five steps of progressive discipline for performance issues at Fuyao is routinely subject to termination. (ECF 33-1, PageID 327, Decl. ¶17.) When the employer produces evidence supporting a legitimate nondiscriminatory reason for discharge, the presumption raised by the *prima facie* case is rebutted and drops from the case. *Burdine*, 450 U.S. at 255. It becomes the plaintiff's burden to show the reason given is merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804–06. The plaintiff must do more than simply dispute facts; he must produce sufficient evidence that "demonstrate[s] that the employer did not 'honestly believe' in the proffered nondiscriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). In this sense, pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 146 (2000)). As Fuyao has demonstrated its systematic, documented progression of discipline leading to Garner's termination, and as Garner cannot point to any conflict in the record on this point beyond his own suspicions, he cannot show any genuine dispute in concerning pretext. Thus, even if his discrimination and retaliation claims had not already failed the *prima facie* analysis, they must fail for this reason as well.

In addition to Garner's Title VII retaliation claim, Count III also asserts retaliation for "report[ing] certain safety issues to Occupational Safety and Health Administration." (ECF 1, PageID 5, Complaint ¶32.) The anti-retaliation provisions in OSHA are set forth in OSHA § 11(c), 29 U.S.C. § 660(c). Section 11(c) requires that such complaints be filed with OSHA within 30 days of an alleged adverse action. If OSHA finds merit and the case cannot be settled, the Secretary

of Labor may file a civil action in federal court against the person who committed the violation.

Id. There is no private right of action under Section 11(c):

> With respect to claims 1, 2, and 4 of the complaint, Judge Hogan
> held that OSHA does not grant employees a private right of action
> to redress retaliatory dismissals that violate § 11(c).
>
> * * *
>
> "The dispositive question" is not whether a private right of action
> under § 11(c) is desirable, but "whether Congress intended to create
> any such remedy. Having answered that question in the negative,
> our inquiry is at an end." *TAMA v. Lewis*, [444 U.S. 11, 23 (1979)].
> Accordingly, we hold that there is no private right of action under
> OSHA § 11(c), 29 U.S.C. § 660(c).

*Taylor v. Brighton Corp.*, 616 F.2d 256, 258, 264 (6th Cir. 1980). To the extent it attempts to assert

a private right of action under OSHA, Count III will be dismissed.

## IV. Conclusion

Because Plaintiff has no direct evidence that gender or national origin animus motivated

employment action against him and cannot disprove the stated non-discriminatory reasons as

pretext, and because Plaintiff can show no causal connection between his complaints and the

decision to terminate his employment and because other incidents of which he complains do not

amount to actionable facts, Defendant's Motion for Summary Judgment, ECF 31, is **GRANTED**.

The Clerk is **ORDERED** to **TERMINATE** this case from the dockets of the United States District

Court for the Southern District of Ohio, Western Division at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, October 20, 2023.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE